IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARCELYN RASMUSSEN,
*obo Randy Rasmussen, deceased,*

    Plaintiff,

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

No. CV-05-6342-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiff Arcelyn Rasmussen seeks judicial review of the Social Security Commissioner's final decision denying her deceased husband, Randy Rasmussen, Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision is REVERSED, and this case is REMANDED FOR FURTHER PROCEEDINGS consistent with this opinion.

PAGE 1 - OPINION AND ORDER

## BACKGROUND

Born in 1959, Mr. Rasmussen completed high school and an Associate's Degree. Tr.[1] 56, 74. Between 1985 and 1998 Mr. Rasmussen worked as a naval radar systems supervisor, computerized systems operator, and radar operator Tr. 69, 82. In 1999, Mr. Rasmussen worked as a painter, housekeeper, and maintenance worker. *Id.* Mr. Rasmussen was insured for benefits until September 30, 2003, and must show that his disability began before that date. Tr. 16.

Mr. Rasmussen alleges disability since March 1999 due to sleep apnea, migraine headaches, "back strain with loss of motion," hypertension, rhinitis, gastroesophageal reflux disease, and tinnitus. Tr. 68. Mr. Rasmussen's application was initially denied. Tr. 43-46. After Mr. Rasmussen's July 2004 hearing before an Administrative Law Judge ("ALJ"), the ALJ found Mr. Rasmussen not disabled. Tr. 15-25. The Appeals Council denied review, making the ALJ's decision final. Tr. 5-7. Mr. Rasmussen's widow seeks review of this finding. Tr. 9-10.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Plaintiff challenges the ALJ's evaluation of the evidence and his conclusions at steps three and five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer March 20, 2006.

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 404.1520(e), Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g).

## THE ALJ'S FINDINGS

The ALJ found Mr. Rasmussen's testimony and allegations of disability "not totally credible." Tr. 24. The ALJ found Mr. Rasmussen's degenerative disc disease, sleep apnea, migraine headaches, personality disorder, social phobia, and obesity "severe" and evaluated Mr. Rasmussen's RFC as:

> The claimant has the following residual functional capacity: capable of sedentary work with no public service or more than intermittent contact with the public, moderate limitation in remembering and carrying out detailed instructions or tasks as well as dealing with supervisor and co-employees.

Tr. 24-26.

At step five, the ALJ found Mr. Rasmussen unable to perform a full range of sedentary work, but able to perform "a significant number of jobs in the national economy." Tr. 25. Using the medical-vocational rules as a framework, the ALJ determined Mr. Rasmussen was not disabled under the Act at any time through the date of his decision. Tr. 25.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the ALJ's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). In reviewing a credibility finding, the reviewing court must consider whether the Commissioner provided "clear and convincing reasons" for finding a claimant not credible. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Plaintiff contends the ALJ improperly assessed Mr. Rasmussen's credibility, improperly ignored an examining physician's opinion, erred in finding Mr. Rasmussen's combined mental and physical impairments non-severe, and failed to consider the Veteran's Administration disability assessment.

### I.     Credibility

Plaintiff suggests the ALJ improperly assessed Mr. Rasmussen's credibility by citing

inconsistencies in the medical record, effects of sleep apnea surgery, secondary gain, and his activities of daily living.  Pl. Op. Br. at 20-21.

### A.     Legal Standard

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id*.

### B.     Activities of Daily Living

The ALJ cited Mr. Rasmussen's activities of daily living, including housework, bimonthly shopping, fishing, camping, and daily internet surfing.  Tr. 22.  The ALJ also noted that Mr. Rasmussen "gets the children off to school at 8 a.m. as his wife gets up and out at 5 a.m."  Tr. 22.  Such activities of daily living may suggest a claimant's allegations are less limiting than the claimant alleges.  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ also repeatedly cited Mr. Rasmussen's effort to "dig his house out of a landslide."  Tr. 20, 22.  This comment originates from a physical therapist's report that "today he has been digging from a landslide on his property, so he is hurting worse."  Tr. 529.  This isolated effort does not represent sustainable daily activity.

For these reasons, the ALJ's reference to Mr. Rasmussen's daily activities is sustained.  The ALJ's notice of Mr. Rasmussen's activity regarding a landslide is not sustained.

### C.     Medical Record

The ALJ noted alleged discrepancies between Mr. Rasmussen's disability claim and his

5 - OPINION AND ORDER

visits to medical practitioners in the month of his initial filing and the subsequent year. Tr. 17. The ALJ also suggested that Mr. Rasmussen "does not appear to be entirely forthcoming regarding the onset and duration of his anxiety/panic condition." Tr. 18.

Plaintiff suggests that "a look at the record shows this comment by the ALJ to be pointless." Pl. Op. Br. at 20. Plaintiff points to Mr. Rasmussen's August 1998 sleep apnea surgery and physician visits between October and December 1998 for migraines, nausea, and anxiety. Pl. Op. Br. at 20-21.

An ALJ may make a negative credibility inference from a failure to seek treatment, but this record does not support such an inference throughout the period in question. The record shows Mr. Rasmussen made regular physician and physical therapy visits between October 1997 and May 2004. Tr. 215-274, 512-588. The ALJ's inference that Mr. Rasmussen failed to seek treatment is not sustained.

### D. Secondary Gain

The ALJ suggested, in considerable detail, that Mr. Rasmussen was unmotivated to work because he was receiving more income from veteran's disability benefits than he would earn if employed. Tr. 21. Generally, this court does not sustain such inference. By definition, applications for disability insurance is an application for financial assistance. If desire or expectation of obtaining benefits were sufficient to discredit a claimant, no claimant would be found credible. *Ratto v. Sec'y of Health & Human Servs*, 839 F. Supp. 1415, 1428-29 (D. Or. 1993). The ALJ's speculation regarding Mr. Rasmussen's benefit payments and potential earnings is not sustained.

### E. Sleep Apnea Surgery

Plaintiff suggests the ALJ erroneously concluded that Mr. Rasmussen's sleep apnea surgery was successful in his credibility analysis. Pl. Op. Br. at 21. The ALJ found that after discharge Mr. Rasmussen was feeling more alert and was doing well. Tr. 17. The ALJ did not

cite this procedure in his credibility analysis. This submission therefore fails.

### F. Conclusion

The ALJ's assessment of Mr. Rasmussen's activities of daily living is sustained. The ALJ appropriately cited these activities to illustrate inconsistencies between Mr. Rasmussen's capabilities and his alleged disability. The ALJ's notice that Mr. Rasmussen did not visit practitioners in February 1999 does not support his universal negative credibility assessment. This court does not sustain the ALJ's inference that Mr. Rasmussen's application for disability benefits was motivated by secondary gain.

## II. Medical Source Statements

### A. Examining Physician Dr. Miller

Plaintiff asserts the ALJ erroneously rejected the opinion of examining physician Dr. Miller. Pl. Op. Br. at 15. Specifically, plaintiff points to Dr. Miller's alleged findings limiting Mr. Rasmussen's standing and ambulating, limiting Mr. Rasmussen's hand use, a cognitive impairment, and recommendation that Mr. Rasmussen elevate his feet. Pl. Op. Br. 16. Contrary to defendant's submission, the ALJ's narrative does not discuss Dr. Miller's opinion. Def.'s Br. at 11.

Dr. Miller examined Mr. Rasmussen in March 2002. Tr. 186-191. Dr. Miller's diagnostic impressions included a "history of sleep apnea," "likely . . . significant problems with both the cervical spine and the back," nicotine dependence, and GI complaints "with no work-up available for assessment." Tr. 191. Dr. Miller concluded her opinion with a functional assessment:

> This gentleman is clearly having difficulty standing and ambulating. He should not be expected to do so at all in a work setting due to his poor physical condition. Sitting would also have to be limited due to his peripheral edema and the necessity of keeping the feet elevated. I think that the use of his hands is currently significantly impaired. He should not be lifting and carrying any significant weight unless and until issues with the spine are fully evaluated and sleep apnea successfully addressed.

7 - OPINION AND ORDER

> Hearing, speaking and vision appear to be fairly intact. There does appear to be significant cognitive impairment, but judgment appears quite intact. Tr. 191.

Dr. Miller stressed she did not have access to Mr. Rasmussen's medical records at the time of her opinion. Tr. 186.

Dr. Miller's examination findings and notes do not support the degree of impairment she asserts. She made no finding regarding Mr. Rasmussen's hands and the record does not reflect any other hand limitations other than a transient rash. Dr. Miller's brief mental status examination does not explain her "significant cognitive impairment" finding, and no treating physician noted such an impairment. Tr. 190, 546, 574, 576. A treating physician's assessment is generally accorded greater weight than an examining physician's opinion. *Edlund*, 253 F.3d at 1157. An ALJ may also reject a physician's opinion inadequately supported by clinical notes or findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Furthermore, an ALJ is not required to discuss evidence "neither significant nor probative." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). For these reasons, the ALJ did not err in failing to discuss Dr. Miller's opinion. Her opinion establishes no supported limitations excluded from Mr. Rasmussen's RFC calculation.

### B.    Veteran's Administration Treating Physicians

Plaintiff suggests the ALJ failed to consider Mr. Rasmussen's mental impairments, including a bipolar assessment, in his analysis of Mr. Rasmussen's combined impairments. Pl. Op. Br. at 22-23. The ALJ did not mention Mr. Rasmussen's bipolar diagnosis. The ALJ noted Mr. Rasmussen's panic disorder, but found

> subjectively the claiamnt reported that he was anxious alot and having panic attacks. Although not having mentioned this condition within the last two years he now stated that this had been going on for about two years. There had been a mention of anxiety in December 1998; however, none within the relevant time period, since the alleged onset date.

Tr. 18.

The ALJ is obligated to consider the entire case record. 20 C.F.R. § 404.1520(a)(3). Mr. Rasmussen must show that his impairment began before his date last insured, which is September 30, 2003. 20 C.F.R. § 404.320(b). Therefore, the "relevant period" in which Mr. Rasmussen must establish disability onset is between his March 1999 alleged onset date and his September 30, 2003 date last insured. Here, the ALJ did not discuss the Veteran's Administration ("VA") treating psychiatrists' records produced in that period. Tr. 20.

Veteran's Administration medical records show that treating physicians first noted Mr. Rasmussen's anxiety disorder in December 1998. Tr. 252, 253. In May and June 2002, physicians noted panic and anxiety disorders and depression. Tr. 211. Veteran's Administration psychiatrists assessed Mr. Rasmussen with bipolar disorder and "severe depression" in December 2002. Tr. 582. In January 2003, he was assessed with panic disorder and bipolar disorder. Tr. 577-78.

In February 2003, the treating psychiatrist repeated his panic disorder assessment, but noted that Mr. Rasmussen's cognitive abilities appeared intact. Tr. 576. In June 2003, the psychiatrist assessed depression, and found Mr. Rasmussen's cognition intact. Tr. 574. In August 2003, the psychiatrist assessed panic disorder and agrophobia. Tr. 566. In May 2004, shortly before the record closes, the treating psychiatrist again assessed Mr. Rasmussen with bipolar and panic disorders. Tr. 546.

These records show that Mr. Rasmussen had significant mental disorders prior to the expiration of his insured period. The record does not support the ALJ's finding that a panic disorder was not diagnosed until May 2004. Tr. 20. Such contradictory findings are not sustained. *Batson*, 359 F.3d at 1193, *Magallanes*, 881 F.2d at 750. Additionally, the VA psychiatrists' repeated bipolar assessments cannot be construed as insignificant or non-probative. *See Howard*, 341 F.3d at 1012. The ALJ failed to adequately address the VA treating physicians' opinions regarding Mr. Rasmussen's mental impairments.

9 - OPINION AND ORDER

### III.  Veteran's Administration Disability Assessment

Plaintiff claims the ALJ "improperly rejected the holdings of the VA which found plaintiff was disabled from work." Pl. Op. Br. at 16.  Plaintiff asserts that the ALJ must "give great weight" to a VA disability determination, and that the ALJ presently failed to do so.  Pl. Op. Br. at 16-17.

The VA found Mr. Rasmussen disabled due to the combined effects of his headaches, back strain, gastroesophageal reflux disease, and sleep apnea.  Tr. 109.  The ALJ presently cited the VA findings, but noted he must make his own findings based upon Social Security law.  Tr. 19-20.  While an ALJ must carefully consider Veterans Administration findings, he is not bound by another agency's determination of disability.  *McCartey v. Massinari*, 298 F.3d 1072, 1076 (9th Cir. 2002); 20 C.F.R. § 404.1504.  Plaintiff's submission that the ALJ was obligated to find him disabled based upon the VA disability rating fails.

### REMAND

After finding the ALJ erred in his decision denying Mr. Rasmussen's application for benefits, the court must determine the proper remedy.  This court has discretion to remand for further proceedings or for immediate payment of benefits.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  Thus, improperly rejected evidence should be credited as true and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178

(citing *Smolen*, 80 F.3d at 1292).  However, where it is not clear the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion to credit the evidence or not.  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

Here, the ALJ improperly rejected the VA treating psychiatrists' opinions regarding Mr. Rasmussen's bipolar disorder and the onset of Mr. Rasmussen's panic disorder.  However, even if credited, this evidence does not clearly establish disability.  Further proceedings are necessary for the ALJ to properly evaluate this evidence, reassess Mr. Rasmussen's RFC accordingly, and obtain additional VE testimony, if necessary.

## CONCLUSION

This court finds that the Commissioner's decision that Mr. Rasmussen did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is not based upon correct legal standards.  The Commissioner's decision is, therefore, REVERSED, and the case is REMANDED FOR FURTHER PROCEEDINGS consistent with this opinion.

IT IS SO ORDERED.

Dated this  28th  day of November, 2006.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge